**KORAMBA FARMERS & GRAZIERS NO. 1; Dean Phillips, Tax Matters Partner, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Appellee.**

**Koramba Farmers & Graziers No. 1; Dean Phillips, Tax Matters Partner, Appellants,**

v.

**Commissioner of Internal Revenue Service, Appellee.**

**Koramba Farmers & Graziers No. 2; Dean Phillips, Tax Matters Partner, Appellants,**

v.

**Commissioner of Internal Revenue Service, Appellee.**

Koramba Farmers & Graziers No. 2; Dean Phillips, Tax Matters Partner, Appellants,

v.

Commissioner of Internal Revenue Service, Appellee.

Nos. 98–1454, 98–1460, 98–1461 and 98–1462.

United States Court of Appeals, District of Columbia Circuit.

Argued May 6, 1999.

Decided June 4, 1999.

John R. Wilson argued the cause for the appellants. Peter J. Perla was on brief for the appellants.

Paula K. Speck, Attorney, United States Department of Justice, argued the cause for the appellee. Loretta C. Argrett, Assistant Attorney General, and Richard Farber, Attorney, United States Department of Justice, were on brief for the appellee. Teresa T. Milton, Attorney, United States Department of Justice, entered an appearance.

Before: SILBERMAN, WILLIAMS and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellants, Australian partnerships subject to U.S. income reporting and their tax partner, seek review of a Tax Court opinion holding that they were not entitled to deduct expenditures for water and soil conservation expenditures made for property located in Australia. *See Koramba Farmers & Graziers No. 1 v. Commissioner,* 110 T.C. 445, 1998 WL 341752 (1998). The Tax Court concluded that section 175(c)(3)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 175(c)(3)(A)(ii) (IRC § 175), does not allow the deduction of such expenditures on foreign land because the expenditures must be consistent with the soil conservation plan of a state agency with jurisdiction over the taxpayer's land. On appeal the appellants argue that IRC § 175(c)(3)(A)(ii) requires that expenditures simply be consistent with *any* state soil conservation plan regardless whether the taxpayer's property is located within the jurisdiction of the agency with whose plan its water and soil conservation expenditures are consistent. We disagree and hold that IRC § 175(c)(3)(A)(ii) requires that the plan apply to " 'the area in which the land is located.' " *Koramba,* 110 T.C. at 452 (quoting IRC § 175(c)(3)(A)(i)). Accordingly, we affirm.

## I.

Koramba Farmers & Graziers No. 1 (Koramba No. 1) and Koramba Farmers & Graziers No. 2 (Koramba No. 2) (collectively Koramba) are general partnerships organized under Australian law with their principal place of business in New South Wales, Australia. Dean Phillips, a Koramba partner, is a U.S. citizen. In 1985 Philips & Heetco, Inc. (Heetco), a United States corporation, acquired from William and Penelope Owen a fifty per cent interest in their New South Wales, Australia farmland. Phillips, Heetco and the Owens then formed Koramba No. 1 to develop the farmland. In 1986 Koramba No. 1 began construction of an irrigation project in order to grow cotton on the farm. In 1987 and 1988 the partners purchased two additional parcels, formed Koramba No. 2 and expanded their cotton farming. In constructing the irrigation system, Koramba provided for soil and water conservation. As required by Part VII of the New South Wales Water Act, *see* Water (Amendment) Act, 1983, No. 142, § '167 (N.S.W. Inc. Act) (Joint Appendix (JA) at 34), Koramba sought and received general approval from the New South Wales Department of Water Resources for its expenditures. It elected to deduct from its federal income taxes its conservation expenditures for the tax years 1986–89 pursuant to IRC § 175. The Internal Revenue Service (IRS) accepted Koramba No. 1's 1986 deduction but disallowed all of Koramba's post–1986 deductions.[1] The IRS concluded that the Tax Reform Act of 1986, Pub.L. 99–514, sec. 401(a), 100 Stat. 2221, in including IRC § 175(c)(3), disallowed any deduction for "conservation expenditures incurred with respect to land outside the United States." *Koramba,* 110 T.C. at 448.

Koramba then petitioned the Tax Court for review, claiming that under IRC § 175(c)(3) (A)(ii) "conservation expenditures need only be consistent with the plan of *some* State agency," regardless whether the plan covered the taxpayer's land, "to be deductible."[2] 110 T.C. at 452 (emphasis original). The Tax ·Court disagreed, holding that "the statute requires that the improved land must lie within the state whose agency is comparable to" the Department of Agriculture's Soil and Conservation Service (SCS). *Id.* Koramba appealed.

## II.

Before December 31, 1986, the Internal Revenue Code allowed a farmer to deduct soil and water conservation expenditures not exceeding twenty-five per cent of the farmer's gross farm income. *See* IRC § 175 (1982) (amended 1986). In 1986, responding to a concern that section 175 and similar provisions "may be affecting prudent farming decisions adversely.... [and] that such provisions may have contributed to an increase in acreage under production, which in turn may have encouraged the present-day overproduction of agricultural commodities," S.Rep. No. 99–313, at 265 (1986), the Congress amended IRC § 175 to limit the deductibility of conservation expenditures. It did so by adding section 175(c)(3)(A) which provides:

EXPENDITURES MUST BE CONSISTENT .WITH SOIL CONSERVATION PLAN.—Notwithstanding any other provision of this section, subsection (a) shall not apply to any expenditures unless such expenditures are consistent with—

(i) the plan (if any) approved by the Soil Conservation Service of the Department of Agriculture for the area in which the land is located, or

---

1. The IRS denied Koramba No. 1 a $806,633 deduction for 1987 and a $519,004 deduction for 1988. Koramba No. 2 was denied a $1,011,360 deduction for 1988 and a $2,683,-415 deduction for 1989. Koramba No. 1 had no 1989 deductions.

2. Before the Tax Court Koramba also argued that the term "state" included a foreign state. Koramba does not appeal the Tax Court's rejection of this argument.

(ii) if there is no plan described in clause (i), any soil conservation plan of a comparable state agency.

The appellants argue that the language of (ii) is unambiguous, that is, a farmer qualifies for the deduction under (ii) if his conservation expenditures are consistent with the soil conservation plan of "any" state regardless whether the expenditures are made for property located in that state.[3] We disagree. To be deductible the conservation plan must be consistent with that of a state agency "comparable" to the SCS.

First, the most natural way to read "comparable state agency" is that the state agency, like the SCS, must have jurisdiction over "the area in which the [taxpayer's] land is located." Second, it is highly unlikely "that Congress intended to approve the deductions of conservation expenditures in Nevada, for example, which are consistent with a conservation plan of an agency of some other state" but inconsistent with the conservation plan of Nevada's agency. *Koramba*, 110 T.C. at 452. The appellants argue that this result will not occur because the underlying assumption ignores "the scientific underpinnings of soil and water conservation plans," Reply Br. at 3, and erroneously assumes that "state plans vary widely and, hence, that conservation expenditures consistent with the plan of one state will not be consistent with the plans of others," Appellants' Br. at 25.

While the record is inadequate for us to determine whether all state plans are essentially the same, we would note that small differences in state plans may reflect important policy differences—e.g., arid states are likely to have greater conservation concerns. Moreover, if, as the appellants contend, state plans are essentially identical and based on best management practices, the Congress's reference to a "comparable state agency" would appear to be superfluous—it could simply have allowed deductions conforming with "best management practices." *Cf. Swanson Mining Corp. v. FERC*, 790 F.2d 96, 102 (D.C.Cir.1986) (provisions are read to give each part meaning).

Examining the legislative history, we find no indication that the Congress intended the deduction to apply outside the United States. To the contrary, it supports the nondeductibility of foreign expenditures. The joint conference report states that "the conferees wish to clarify that while prior approval of the taxpayer's particular project by the [SCS] or comparable state agency is not necessary to qualify the expenditure under the provision, *there must be an overall plan for the taxpayer's area that has been approved by such an agency.*" H.R.Rep. No. 99–841, at 110 (1986) (emphasis added). As "[t]he phrase 'such an agency' unmistakably refers to the SCS or a State agency comparable to the SCS whose plan is in effect for the taxpayer's area,"[4] 110 T.C. at 453, to

---

3. The appellants also argue that the express geographic limitation in clause (i) manifests that the absence of the limitation in clause (ii) is intentional. As discussed *infra*, however, we believe the phrase "comparable state agency" encompasses a geographic limitation. Accordingly, we find several of the appellants' other arguments unpersuasive. We reject their reliance on other IRC provisions that contain specific geographic limitations, *e.g.*, IRC § 616(d) (limiting deductibility of mining expenditures made "outside the United States") as well as an unenacted soil conservation tax credit for soil conservation expenditures made "within the United States," *see* H.R. H4170, 88th Cong. § 892(h)(3) (1984) (as amended by the Senate), *reprinted in* Cong. Rec. H4547. Similarly, their cita-

tion to cases holding that a geographic limitation in one provision demonstrates that the absence of a limitation in a second provision is deliberate, *see, e.g., Water Quality Ass'n Employees' Benefit Corp. v. United States*, 795 F.2d 1303 (7th Cir.1986) (invalidating IRS-imposed geographic limitation on membership in "voluntary employees' beneficiary associations" where other tax-exempt organizations had statutory geographic membership limitations provided by statute), is unavailing because of our conclusion that clause (ii)'s geographic limitation is necessarily implied.

4. Koramba argues that imposition of a geographic nexus requirement interferes with the congressional purposes of creating tax neutrality and promoting "prudent farming prac-

the extent the legislative history is relevant, it supports the view that those involved in drafting the report were aware that the congressional limitation had geographic implications.

Because the natural interpretation, and the one supported by what legislative history exists, of the term "comparable state agency" means that the state agency, like the SCS, must have jurisdiction over the taxpayer's land and because the alternative reading could, as noted earlier, lead to an absurd result, we conclude that IRC

§ 175(c)(3)(A) does not allow the deduction of soil conservation expenditures made for property located outside the United States. Accordingly the opinion of the Tax Court is

*Affirmed.*

---

tices." *See* S.Rep. No. 99–313, at 265. As the IRS notes, however, the Congress also

wanted to reduce overproduction. *Id.*